# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| JAMIE R. MARSH,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | NO. C11-1559-RSM-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Jamie R. Marsh appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382, 1382(c), after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for an award of benefits.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-nine year old woman with a high school education. Administrative Record ("AR") at 198. Her past work experience includes employment as a receptionist, a cleaner, and an owner of a house cleaning business. AR at 186, 203-08. Plaintiff was last gainfully employed in 2008. AR at 186.

REPORT AND RECOMMENDATION - 1

On January 23, 2009, plaintiff filed a claim for SSI payments. Plaintiff asserts that she is disabled due to morbid obesity, osteoarthritis, multiple pulmonary embolisms, severe migraines, fibromyalgia, chronic pain syndrome, anxiety, depression, and PTSD. AR at 37-38, 105.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 91, 96, 105, 109, 112. Plaintiff requested a hearing which took place on October 26, 2010. AR at 33-35. On December 30, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform three specific jobs existing in significant numbers in the national economy. AR at 15-25. After reviewing additional evidence, the Appeals Council denied plaintiff's request for review, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). AR at 1. On September 19, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. EVALUATING DISABILITY

As the claimant, Ms. Marsh bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R.

§§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

V. DECISION BELOW

On December 30, 2010, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since January 23, 2009, the application date.

2. The claimant has the following severe impairments: status-post history of multiple knee surgeries; history of foot surgery; status-post elbow ulnar release; obesity; obstructive sleep apnea (OSA); thoracic degenerative disc disease; a syndrome of polyarthralgia versus fibromyalgia; a borderline personality disorder; and an undifferentiated somatization disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: she can lift and carry 20 pounds occasionally and 10 pounds frequently; she can occasionally balance and stoop, and seldom kneel, crawl, crouch, or climb ramps and stairs. She needs an option to stand at least every 30 minutes to alleviate discomfort. She should avoid working around hazards. She can perform simple and some detailed work; she should have only superficial contact with the general public.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1963 and was 45 years old on the date the application was filed, which is defined as a younger individual age 45-49.[2]

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 23, 2009, the date the application was filed.

AR at 17-25.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Does substantial evidence support that ALJ's finding that Ms. Marsh can work as a diet clerk?

2. Did the ALJ properly evaluate the medical opinions?

3. Does substantial evidence support the ALJ's evaluation of Ms. Marsh's use of a cane?

4. Did the ALJ err in finding the plaintiff less than credible?

Dkt. No. 19 at 1-2.

## VII. DISCUSSION

A. The ALJ Erred in Finding that Plaintiff Can Work as a Diet Clerk

Plaintiff argues that the ALJ erred in finding at step five that she could work as a diet clerk. The diet clerk position involves working in a hospital or nursing home, collecting menus from another employee, and adding up how many people are ordering each type of meal offered. AR at 80. The diet clerk position is a semi-skilled occupation. AR at 80. Under Social Security Ruling (SSR) 82-41,[3] when an ALJ concludes that a claimant is not disabled based on his or her ability to performed skilled or semi-skilled work, the ALJ must identify the transferable skills that the claimant possesses that can transfer to other jobs. *See, e.g., Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

In this case, the ALJ failed to make the required transferable skills finding. Instead, the ALJ stated, "Transferability of job skills is not material to the determination of disability

---

[3] The SSRs are "binding" on ALJs. *See, e.g., Bray*, 554 F.3d at 1224.

REPORT AND RECOMMENDATION - 6

because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferrable job skills." AR at 24. The Commissioner concedes that the ALJ erred because the "issue of transferable skills would not have been a determining factor in application of the Guidelines." Dkt. No. 20 at 11.

The Commissioner contends that the ALJ's error was harmless because "the transferable skills upon which she relied were testified to by the vocational expert." Dkt. No. 20 at 11. The record, however, does not support the Commissioner's position. Rather than identifying any transferable skills, the vocational expert simply noted that plaintiff "also ran a business." AR at 80. Noting the activity of running a business does not convey any insight into the skills plaintiff acquired or whether those skills are transferable. As to the later point, the Commissioner attempts to augment the record by stating that plaintiff's housecleaning business involved "the same or similar tools and machines" and "similar products, processes, or services" as a diet clerk. Dkt. No. 20 at 11. In reviewing the ALJ's decision, this court "must review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F.3d at 1225 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Therefore, the court does not consider the *post hoc* rationalizations offered by the Commissioner about the transferability of plaintiff's skills. Even if the court did consider it, the Commissioner's argument is conclusory and unsupported by the record. In sum, the court finds that the ALJ failed to support her conclusion that plaintiff could work as a diet clerk.

      B.      <u>The ALJ Erred in Her Evaluation of the Medical Evidence</u>

           *1.*      *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater

opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

### 2. *Manipulative Limitations Found by Dr. Yuen and Dr. Featherstone*

Plaintiff contends that the ALJ erred by rejecting the opinions of two of her treating physicians regarding her manipulative limitations. Specifically, Dr. Yuen and Dr. Featherstone both opined that due to osteoarthritis in her hands, plaintiff could engage in only occasional reaching, handling, and fingering. AR at 1226, 1230.

In evaluating the opinions of Dr. Yuen and Dr. Featherstone, the ALJ noted that she "carefully considered" their opinions, but refused to entirely adopt them because "the imaging evidence has not shown any upper extremity degenerative changes to any significant degree (exhibits 37F:34-35, 47; 38F:5-6), contrary to the reported manipulative restrictions." AR at 21. In fact, an MRI of plaintiff's wrists revealed "[s]ubchondral cysts with overall distribution

consistent with osteoarthritis" and extensor Capri ulnaris tendon tendinosis. AR at 1223; *see also id.* at 1222 (MRI of plaintiff's hand showed a "[s]mall subchondral cyst in the head of the third middle phalanx consistent with [degenerative joint disease] or osteoarthritis."). The ALJ did not cite any medical evidence to support her conclusion that those MRI findings were not "significant." An ALJ cannot simply substitute her own lay opinion for that of a treating physician. *See, e.g., Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Similarly, the Commissioner argues that Dr. Yuen's opinion of disability was undermined by the fact that he recommended only conservative treatment: 800 mg of Ibuprofen and Gabapentin. AR at 21. However, there is no medical opinion in the record to suggest that those treatments were in fact conservative or that more aggressive treatment would be effective.[4]

Moreover, the opinions of the treating physicians were entitled to more weight because they were supported by objective evidence: an MRI and a clinical examination. *See* 20 C.F.R. §§ 416.912(b)(1), 416.928(b) & (c) (2011). Although the ALJ noted that Dr. Featherstone's "treatment notes do not show any significant findings," Dr. Featherstone's note from October 2010 stated, "Exam shows hand arthritis especially in the PIP and DIP joints which makes it difficult to grab items." *Id.* at 20, 1229. Dr. Yuen explained that based on his clinical examination, plaintiff's hands "appear to have Heberden's and Bouchard's nodes that are typical for osteoarthritis." AR at 1187. Dr. Yuen's opinion was entitled to more weight because he was opining about an area within his specialty of rheumatology. *See, e.g., Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); 20 C.F.R. § 416.927(d)(5) (2011); *see also Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (noting that rheumatology is the

---

[4] The non-examining state agency physician, Dr. Bernadez-Fu, issued a report in September 2009, prior to the MRI findings, so the report necessarily did not address the findings. AR at 762-69.

REPORT AND RECOMMENDATION - 9

relevant specialty for fibromyalgia). For these reasons, the ALJ erred in rejecting the opinions of Dr. Yuen and Dr. Featherstone regarding plaintiff's manipulative limitations.

Because the ALJ rejected those opinions, she did not include any limitations in reaching, handling, or fingering in her hypothetical to the vocational expert. Where, as here, an ALJ relies on vocational expert testimony to support a step five conclusion that a plaintiff can work, the ALJ must ask the expert a complete, accurate hypothetic question. *See, e.g., Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011). Moreover, the vocational expert testified that the diet clerk and table worker positions required frequent reaching, handling, and fingering, and that the semiconductor die loader position required constant reaching, handling, and fingering. AR at 83. Therefore, plaintiff's manipulative restrictions would preclude her from performing the three positions identified by the vocational expert.

### 3. Part Time Work

Plaintiff contends that the ALJ erred in finding that she could work full time. Both Dr. Featherstone and Dr. Yuen opined that plaintiff could stand or walk less than two hours in an eight-hour workday, and sit less than six hours in an eight-hour workday.[5] AR at 1224-25, 1228-29. Taken together, those opinions state that plaintiff could not work full time because she could not maintain any combination of postures for a full eight-hour day. The ALJ explained that although she carefully considered the opinions, she did not adopt those findings because "the imaging evidence has not shown any upper extremity degenerative changes to any significant degree (exhibits 37F:34-35, 47; 38F:5-6), contrary to the reported manipulative restrictions. The claimant's back condition is also only mild, and she has good range of ankle

---

[5] Dr. D.S. Zachariah prepared a DSHS evaluation in July 2010 and opined that plaintiff could sit only one hour and stand only ten minutes in a workday. AR at 791-797.

REPORT AND RECOMMENDATION - 10

motion (exhibits 32F; 37F:8)." AR at 21. The medical opinions, however, were not based only on plaintiff's upper extremity limitations, back pain, and ankle motion. Instead, Dr. Yuen explained that plaintiff's limitations on sitting, standing, and walking were based on her fibromyalgia and osteoarthritis. *Id.* at 1225. When asked what findings supported her conclusion, Dr. Featherstone wrote,

> Patient has difficulty moving from chair to exam table. She has severe coccyx pain which she is seeking a specialist for with little relief—this makes it difficult for her to sit. Exam shows hand arthritis especially in the PIP and DIP joints which makes it difficult to grab items.

*Id.* at 1229. Dr. Featherstone also opined that plaintiff had additional postural limitations regarding, among other things, balancing, stooping, and kneeling: "Patient has had knee MRI showing knee effusion and arthritis [and] her knees would not support her to do these maneuvers. This is complicated by her severe coccyx pain, fibromyalgia, and obesity." *Id.* at 1229. The ALJ erred in addressing only a portion of the conditions that caused plaintiff's limitations. *See* 20 C.F.R. § 416.923 (ALJ must consider the combination of impairments); *Lester*, 81 F.3d at 832 (explaining that a treating physician's opinion about the combination of a claimant's impairments may be probative).

C. The ALJ Erred in Evaluating Plaintiff's Credibility[6]

Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Instead, where there is no affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony

---

[6] Although it is possible to find plaintiff disabled solely based on the properly credited medical evidence, the court also addresses the issue of her credibility because her subjective complaints to her physicians could have contributed in part to their findings.

must be "clear and convincing." *Lester*, 81 F.3d at 834 (internal quotation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

In this case, the ALJ stated, "The claimant's complaints exceed the nature and extent of the findings in the medical reports, which suggests a great deal of exaggeration. That in turn suggests malingering, or a lack of credibility." AR at 23. Despite that statement, the ALJ made no findings about malingering. In the absence of findings or evidence of malingering, the court will apply the clear and convincing standard.

The ALJ found that plaintiff's activities suggested a greater level of ability than plaintiff alleged. Daily activities that are inconsistent with a claim of disability can undermine a plaintiff's credibility. *See, e.g., Tonapetyan v. Halter,* 242 F.3d 1144, 1147-48 (9th Cir. 2001). In this case, the ALJ summarized activities that plaintiff performed only once to suggest that her activities were much more extensive than she claimed she was capable for performing. For example, the ALJ noted that plaintiff attempted an exercise boot camp: "The fact that the claimant would even attempt to participate in this type of aggressive fitness program indicates that she is not as physically or socially limited as she claims." AR at 22 n.1. However, plaintiff dropped out after one day, which suggests that although her expectations may have been unrealistically high, she is as limited as she alleges. The ALJ also found that plaintiff reported to a counselor that she was able to walk her dogs and engage in yoga, but the record contains no evidence about the duration or frequency of those activities. AR at 1128. Similarly, plaintiff performed some, although it is not clear how much, work on her rental house in 2009 and traveled to California in 2010 to help care for her ill sister. AR at 22-23. A single trip and other potentially isolated activities do not necessarily undermine an allegation

of disability. A claimant need not be utterly incapacitated in order to be eligible for benefits. *See, e.g., Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001).

In addition, the ALJ also failed to consider whether the activities in which plaintiff engaged were transferable to a work setting. Many activities are not easily transferable to a workplace. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In this case, there is no evidence that plaintiff was able to spend a substantial part of her day engaged in activities that are transferable to the work setting. *Orn*, 495 F.3d at 639.

The ALJ also erred by stating that because plaintiff was motivated to undergo bariatric surgery, she was not as physically limited as she contends. AR at 24. In fact, plaintiff's desire to seek treatment actually strengthens her credibility. SSR 96-7. Accordingly, the ALJ erred in evaluating plaintiff's credibility.

D. Remand for Award of Benefits is the Appropriate Relief

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

Here, as set forth above, the ALJ erred in finding plaintiff not credible and improperly discounted evidence from two of her treating physicians establishing that she is disabled. If the opinions of the two physicians were credited, they would establish that plaintiff cannot work

REPORT AND RECOMMENDATION - 13

full time, and she cannot perform any of the three jobs identified by the vocational expert. As a result, there are no outstanding issues that must be resolved. It is unnecessary to address plaintiff's remaining assignment of error regarding her use of a cane.[7] There is nothing to be gained by sending this matter back for another hearing. Accordingly, the undersigned recommends that this matter be remanded with instructions to award benefits.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for the purpose of awarding benefits. A proposed order accompanies this Report and Recommendation.

DATED this 18th day of June, 2012.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

---

[7] Plaintiff contends that the ALJ committed an error of law by finding that plaintiff's use of a cane was consistent with sedentary work. AR at 23. Plaintiff relies on SSR 96-9, which states, "To find that a held-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." Although plaintiff testified that she used a cane and was observed doing so, she has not cited any medical documentation in the record showing that an assistive device was medically required. Accordingly, it appears that SSR 96-9 is inapplicable and plaintiff's claim of error, if addressed, would be unavailing.

REPORT AND RECOMMENDATION - 14